Good morning, your honors. May it please the court, Benjamin Barron of the United States. Recognizing that I only have five minutes, I would like to reserve at least a minute of my time for rebuttal. I'm in the unique position of agreeing with everything that my colleagues say. I really have nothing much to add to it except to respond to your honors' questions, whatever they may be. The unique issues raised in this appeal concerning the standard of review and concerning the other arguments raised by And I would submit on that briefing. And I also would simply add that none of the briefs in this case, including this case, and the other three, address the issue of partial retroactivity of the FSA to some defendants over others. So I would submit that the panel shouldn't breach that issue, but to the extent that it does, that supplemental briefing is warranted. So what do you think the standard of review is where the judge sentenced him to less than the standard of review? Does that seem to be a mandatory minimum the government didn't object, seem to be satisfied with that sentence? Your honor, I would note, first of all, that regardless of whether the standard of review is de novo, plain error, the law is clear and the overwhelming unanimous holdings of circuit courts is that failure to apply a mandatory minimum sentence is plain error. So it really is an academic question as to whether de novo, plain error applies. But as set forth in the... Counsel, I think we can all agree that there's plain error here. There's no doubt about that. So then we go one step further as to whether it's fair and just. Isn't that correct? Well, Your Honor, the question raised by Section 109 is whether the statute is retroactive. Congress... Well, that's not the question. The question is, if it's clearly plain, it's clearly error, but there are four steps to an ultimate finding of plain error. The third and fourth seem to me to be the same, although I don't remember them. But what Judge Fletcher says is the fourth step is what is fair and just, what makes a judicial system brings it into disrepute or raises questions is its integrity. You know, all of those lovely phrases. Yes, Your Honor. Where there is considerable equitable discretion to determine what is fair. Yes, Your Honor. And one of the few times we're able to say what's fair and have it matter. Well, Your Honor, first of all, I would continue to submit that it is de novo review that applies, and I'm not going to go over the many reasons stated in the brief for that. But addressing specifically Your Honor's question, and I apologize for misunderstanding it, in the government's brief at pages 5 to 10, oh, no, I apologize. In the government's opening brief, we addressed the many cases that have concerned whether it is fair for a court to not apply a mandatory minimum. And those cases have all concluded that the fair administration of justice requires the law in effect to be applied by the court. That's what the public expects, and that's what the government has a legitimate right to expect, that where there is a mandatory minimum sentence, that's the law that will be applied. So all of those cases cited in the government's brief have all applied that fourth prong and have concluded that the interest in fairness and justice requires the application of a mandatory minimum. So while the standard view is de novo, it is still plain error to fail to apply the mandatory minimum. Well, this is a unique case where I think we often agree that it's not fairly applied to raise the sentence beyond something that everybody, government and defense counsel, have agreed to be the sentence. The government just blew this one. Your Honor, I would submit that the government did not blow this one. The applicable guidelines range was a minimum of 188 months, nearly 13 years, I believe, just off the top of my head, more than the guideline range, but certainly well over it. And there was simply no way to expect that the district court would go below the mandatory minimum. But the ---- But that being said, the government didn't speak up, didn't object. I have the sentencing transcript in front of me. And the court says there's only 2 grams of actual cocaine here and lays out the range and what it should be, and there's nothing by the government. And it seems that the government, if it really sincerely believed and had the position that this much, much higher range should apply, it should have spoken up. Your Honor, I would certainly submit that sound practice would have been to speak up. But that is separate from the legal point of whether what the government said constituted an objection or not. And regardless of that, whether the de novo standard review applies in this case, the government, I would submit, did object. The government continued to push for a 188-month sentence, even after the district court indicated that a sentence was going to go well below that amount. So I'd submit that there was an objection. Here there is no doubt that the district court was made well aware of the application of a mandatory minimum, including in the defendant's own paper in bold lettering. And based on that fact, and based on the fact that this is a pure question of law, the law of the circuit is that a de novo standard review applies here. And I would cite the Evans-Martinez case in that. Now, explain to me why de novo applies to this sentence. There are two separate reasons, Your Honor. And the strongest one is the Evans-Martinez case. In that case, it concerned the district court's failure to apply the proper guidelines range. There was no objection raised to that. This court concluded that de novo standard review applied, even though there was literally no objection, because it's a pure question of law that did not prejudice either party, in that there is no prejudice to either party in having the district court apply the proper guidelines range. Just the same here, it is a pure question of law as to what the applicable mandatory minimum is, and it doesn't prejudice either side to have the proper law applied at the sentencing. So under the Evans-Martinez case, I would submit it is required that de novo standard review applies here. De novo standard review also applies on the separate ground that it was made plain to the district court repeatedly, both in the defendant's papers and in the PSR, which the government adopted in its sentencing paper, that there was a mandatory minimum here. And the government's general objection, therefore, preserved its right to continue to object on appeal to the district court's failure to apply the mandatory minimum. So on either ground, it is de novo review that applies. But even if it is plain error, it is simply plain error to fail to apply a mandatory minimum sentence, and that is the overwhelming holdings of all district courts to address the issue, including the Clark, Perkins, Barajas, Nunez, and Rodriguez cases cited in the government's briefing. I'm well over my time. I haven't addressed the retroactivity issue at all, but yes. Well, the retroactivity issue is thoroughly covered. I agree, Your Honor. I gave you five minutes because the issue you addressed is the one that we wanted to hear. Yes, Your Honor. So unless there are any further questions, I'll submit. Thank you. Thank you, Your Honor. It's your time. Good morning, and may it please the Court. Good morning, and may it please the Court. Anthony Solis on behalf of the defendant and appellee, Mr. Kim Brown, who is present in the courtroom today. The Court clearly got this right. The government blew this one. This case concerns the court's analysis clearly indicated that it was finding that the mandatory minimum didn't apply because of the – if you look at the guideline range the court calculated, the crack or rather cocaine quantity that it was starting from, it wasn't even sounding off a mandatory minimum. It was indicating that a mandatory minimum didn't apply despite the agreement of the parties. In this case, you say there was no mandatory minimum that was applicable? I'm not saying that there was not a mandatory minimum that was there. What I'm saying is that this court was making a determination that the quantity of drugs did not implicate the mandatory minimum that the parties were arguing applied. And by doing so, by choosing – Didn't the parties agree to what the mandatory minimum was? The parties did agree. And they also agreed that the court wasn't required to be bound by the agreement of the parties. I don't see any agreement by the government that they weren't bound by the mandatory minimum. I see, as Judge Wardle pointed out, a failure of the government to object when the judge didn't apply the mandatory minimum. Well, there's several – I don't see anything in the record that says the government agreed the mandatory minimum was not applicable. No, that's not what I'm saying, Your Honor. What I'm saying is that at the time that the court, the district court indicated that it was not applying a mandatory minimum and that it was finding a quantity and a guideline range that did not implicate a mandatory minimum, there was no objection from the government on any of the bases that the court was finding, whether that was the quantity, the guideline calculations, which the government, at least in one of these appeals, was correct when it said that the guidelines indicate that you calculate the guideline, but if there's a mandatory minimum, the mandatory minimum becomes the guideline if the guideline is below the mandatory minimum. This court did not start off from a guideline of 60 months and say that I'm going to go downward. It started off with a guideline of 15 to 21 months and chose the high end, which indicates that the court was not finding a mandatory minimum. The government also didn't object to the crack powder disparity being eliminated by the court. In fact, the only thing that the government made any indication that it was objecting to with regard to the court's findings was the application or rather non-application of the career offender enhancement. So has your client served his time and is now on supervised release? He is. He's in a halfway house. He's present in the court, but he is in a halfway house outside of custody, so the court would have to re-incarcerate him. Well, yeah, and I'm looking at Evans-Martinez again. I think it's Evans-Martinez. And there the panel said that whereas here a party fails to raise an issue before the district court, plain error review generally applies. And then he goes on where it's purely one of law and where the opposing party will apply the Danovo review and not the plain error. So I'm curious why aren't you arguing the prejudice prong of the Evans-Martinez? Well, I have not yet argued it, but I intend to because certainly you know. Well, either under plain error we would ask whether a reversal would work a manifest miscarriage of justice in this case. Under this standard we ask whether a party will suffer prejudice as a result of the failure to raise the issue in the trial court. And it does seem when someone's been imprisoned and has been released and is serving their supervised release time under the conditions that were ordered to throw that person back into jail because the government didn't speak up at the time of sentencing, it does seem somewhat unjust. Well, I agree, and this is also done with the backdrop of the FSA, meaning if he were sentenced today, it's possible under some of the court's decisions that he would be subject to a different law and the opinion would stand of the court. But now the government, having not objected to any of the analyses by the court, now wants to make the objection and reincarcerate Mr. Brown for presumably what would, you know, be the balance of a 60-month sentence because the court's made it clear that it wasn't going to make him a clear offender and subject him to a 15-year sentence. So the defendant would suffer prejudice. Wouldn't the defendant always suffer prejudice because he'd been sentenced, say, to two years and he should have been sentenced to five? So doesn't he suffer prejudice from that increase in sentence whether he's out or not? Well, yes. The defendant's always going to suffer prejudice if he's going to be reincarcerated. Well, I'm not saying reincarcerated. I'm saying he's in prison serving a two-year sentence, which is what he was given. Doesn't he suffer prejudice if that sentence is then increased to the mandatory minimum of five years? Yes. Yes, he does suffer that prejudice. But I think that what he's going to suffer is prejudice. So in every case, the defendant's going to suffer prejudice. Right. But what I understand Evans-Martinez is to talk about also the prejudice of the appealing party, and we're questioning whether or not the government's going to suffer some prejudice by the government. Well, isn't that what I'm asking you is, isn't that true in every case? It's not as great a prejudice, assuming we're talking about your client. Certainly, this is a greater prejudice than the person who's in prison, hasn't been released, but has his term increased. That's correct. But that's a question of degree of prejudice. Yes. And this defendant would suffer prejudice. Your argument is that everyone suffers prejudice. The government's argument is nobody suffers prejudice when you administer the law properly. It could be. That's the issue. It could be a hybrid of the two, and it might be just something that has to be decided on a case-by-case basis. Few things are always or never. Clearly, this defendant would be prejudiced by a resentencing in this case. But I also agree that the government would be prejudiced. Is that what you're saying? Well, I don't think the government would be prejudiced at all, because now it's operating in an environment where it's recommending that cases that are sentenced after the effective date of the act should get the benefit of the act, whether or not the law applies retroactively or not. So they're not doing that to the cases that are going forward. Now, wait. If we were to send this back for resentencing, are you saying that the district court would be free to sentence under the FSA? I would say that. I know that the government has filed a 28-J letter that indicated that Judge Wright, having indicated in the Curl matter, now, Mr. Curl is the co-defendant of Mr. Brown, that in the Curl matter, Judge Wright did sentence Mr. Curl to a below-mandatory-minimum sentence indicating that the FSA applied to Mr. Curl, saying nothing about Mr. Brown. And then the government, in a subsequent 28-J letter, submitted a transcript that indicated that Judge Wright repudiated that position and now feels that the FSA doesn't apply. So I certainly unremand, if it were to be remanded. Well, it's not really a question of what Judge Wright would do. It's a question of the question that Judge Wardlaw was asking previously, where she gave a number of percentages that some substantial number of district judges apparently take that position, and the government says there are even more who take the other position. And as far as I know, there's been no circuit court that has decided that question. But what you're saying, I gather, is you would have a decent argument that he should be sentenced under the FSA. I would certainly make it. You would make it? I would certainly make it in the district court. Yeah. So as far as I can tell, the district court judges are applying the FSA or not kind of inconsistently. And then the Department of Justice has taken no consistent position as to whether or not to apply the FSA to persons whose conduct predated the act, who are sentenced after the act's effective date, because they want to handle it on a case-by-case basis and handle it through charging, the use of charging discretion. And in this case, if we are really talking about two actual grams, maybe the situation, if it were all being wound, would be this would be a case where they shouldn't have charged it the way they charged it. If they're following any uniform policy at all, which I don't get the feeling that they are, but. Well, Your Honor, you've crystallized my opinion about how these, the office makes charging decisions. They certainly guard their discretion jealously, and they get to, at this point, before this court makes some kind of definitive statement about what the law is in the Ninth Circuit, it's going to handle those cases on a case-by-case basis, and it gets to its prosecutorial decisions. And it likes to do that, which is why, on some cases, it will decide you get the benefit of the act, we won't apply it to you. And maybe over here, like Mr. Johns, maybe, we don't like you. We think you have a bad criminal history. That's what we look for. You know, this is fairly basic criticism of the whole sentencing reform ever since it started, that it transferred the power over sentencing from district judges to the Department of Justice. District judges have been saying that for now 20 years or so, but it's a fact. That's what it did. And a lot of judges don't like it. The Justice Department loves it. I've only been saying it for 10 years. They don't need courts to make those decisions anymore. They can make them. But that's what the law is. I mean, you don't disagree that that's the way it works. You're not going to get an argument here. I would just like to add one final comment, which is to, with regard to what Judge Fletcher said, having this case really being about the fourth prong and whether or not the first three under the plain error analysis applies, that to reverse this would somehow seriously affect the fairness, integrity, or public reputation of public proceedings. I think in light of the new law, that's not possible. And I'm going to submit on that. Thank you. Counsel, can I ask you, not you, but the government. Oh, sorry. Yes, Your Honor. May I ask you a question? Aside from possibly desiring a decision from this panel as to what happens under circumstances like this, which from the questioning could give you some concern, I'm not predicting the result at all. But considering all the facts of this case and the equities, is there any possibility that defense and the government could get together and discuss this and see if there might be a resolution either through our mediation service or just between the two of you? I'm not in a position as a line AUSA to make that determination, although I certainly can forward Your Honor's concern to the supervisors of my office. And I'm sure they will take Your Honor's concern very seriously. All right. And would you notify us whether you plan to pursue that course of action before we issue a decision? Yes, Your Honor, I certainly will. I just want to make two very brief points. The first point I want to make is that the Eighth Circuit in the Spires decision, 628F3rd1049, has addressed the issue of the retroactivity of crack cocaine to defendants who were sentenced after the FSA and concluded that it does not apply to those defendants. They concluded that a continuance of sentencing would have been pointless because the FSA would have applied to that defendant regardless of when he was sentenced. And then also, I just want to note again, regarding the fourth prong of the plain error review, in order for Your Honors to hold that it was not plain error, you would have to hold that it was manifest injustice for the district court not to apply the governing law as to the mandatory minimum sentence. And I would submit that that simply should not be the case, that the law should be applied in every case, should be applied consistently for every defendant, and therefore, it certainly should be plain error here. You know, there was a question that Judge Wardlaw has pointed out that the difference with turning someone loose because the government made a mistake, having him resume a life, having his family think he's back, and then reincarcerating him is somewhat different when you're looking at the equities of an individual case. And maybe you can't look at the equities of an individual case. It may be even under plain error when you say what's the proper administration, fair administration of the law. It's to enforce an unfair law under all circumstances, treat everybody unfairly, that that may be what justice is. But you may also, at least even in prosecutorial discretion, which can even apply at the appellate level, you might want to consider, without establishing any precedent, whether you would want to apply a rule you could apply in a case of an individual who has received this kind of treatment and is now out. Yes, Your Honor. And I do want to emphasize that I do think the equities are not favorable to the defendant. His criminal history, which is vast, his gang membership, I do not believe this is a defendant who is very sympathetic. But that's the decision. Well, maybe it's possible he could be rehabilitated. Anything is possible. Thank you. Thank you. Thank you, counsel. Thank you.
judges: Fletcher B. , Reinhardt, Wardlaw